37 So.3d 265 (2009)
Anthony P. LaROSE and The University of Tampa, Inc., Appellants,
v.
A.K., Appellee.
No. 2D08-1996.
District Court of Appeal of Florida, Second District.
July 24, 2009.
John W. Campbell, Michael D. Malfitano and David S. Steffen of Constagny, Brooks & Smith, LLC, Tampa, for Appellants.
Joseph R. Bryant of Joseph R. Bryant, P.A., Tampa, for Appellee.
PER CURIAM.
Anthony P. LaRose and the University of Tampa appeal a nonfinal order granting A.K. temporary injunctive relief. We affirm.
A.K. filed a multiple-count complaint[1] asserting that Anthony P. LaRose (Professor *266 LaRose) and the University of Tampa (the University) had unfairly accused her and found her to have committed plagiarism. She alleged that the University had entered a grade of "F" for Professor LaRose's Criminology Class 321 based upon the plagiarism issues. Among other claims,[2] A.K. requested "a temporary injunction commanding [the University] to remove the Academic Integrity violation and the four (4) hour `F' for Criminology Class 321 from [A.K.'s] student file to preserve the status quo, and issue a permanent injunction following rendition of final judgment for [A.K.] after trial on the merits." After a hearing, the trial court entered its "order granting temporary injunctive relief." It is this order at issue in this appeal.
"A temporary injunction may be granted only if the movant establishes (1) a likelihood of irreparable harm; (2) unavailability of an adequate legal remedy; (3) a substantial likelihood of succeeding on the merits; and (4) considerations of the public interest support the entry of the injunction." Masters Freight, Inc. v. Servco, Inc., 915 So.2d 666, 666 (Fla. 2d DCA 2005). "The standard of review on appeal of an order concerning a temporary injunction is abuse of discretion." Ware v. Polk County, 918 So.2d 977, 979 (Fla. 2d DCA 2005).
The trial court properly applied the four-prong test from Masters Freight and found that a temporary injunction was necessary. Substantial, competent evidence supports the trial court's findings on each of those four prongs. The trial court's ordered relief was temporary and entirely reversible if necessary at the end of the full trial. Consequently, we find no abuse of discretion in the trial court's order and affirm.
Affirmed.
CASANUEVA, C.J., and ALTENBERND and DAVIS, JJ., Concur.
CASANUEVA, C.J., Concurs specially.
CASANUEVA, Chief Judge, Specially concurring.
I fully concur with the majority opinion. I write to discuss some of the unique factual occurrences that the record demonstrates took place and how those instances may impact the issue of a likelihood of irreparable harm.

The Paper
A.K.'s criminology course required her to author a term paper that complied with the academic integrity standards of the University of Tampa. A.K. chose to write on the Posse Comitatus Act. In the paper she advocated the Act's abolishmenta position that appears to strongly conflict with her professor's personal opinion. Her effort yielded a grade of "F" due to her professor's conclusion that her work was rife with plagiarism. To further emphasize his displeasure with A.K.'s paper, Professor LaRose exercised his discretion to grade her work for the entire course with an "F." Candidly, were I asked to grade the term paper (it is a part of the record on appeal), I would conclude that it was unsatisfactory work product for an upper-level college student which might receive a grade of "F" based upon its merits alone. However, the issue is not the quality of A.K.'s writing but whether the paper contains plagiarized material.

The Definition
The University of Tampa defines the term "plagiarism" as "[p]resenting words *267 or ideas of another person as your own. The most common form of this is copying a direct quotation from a source and not crediting the author." Logic suggests that to present the words or ideas of another person as your own requires some degree of intent. It is undisputed that the University's position is that intent to plagiarize is unnecessary.

An Example
A paragraph from A.K.'s paper illustrates, in part, the issue of contextual plagiarism. She began a paragraph by writing: "The Posse Comitatus Act is archaic and hamstrings effective use of federal assets in the War on Terror, illegal immigration and narcotics." One sentence later she writes: "The act has its loopholes for exceptions, `except in such cases and under such circumstances as such employment of said force may be expressly authorized by the Constitution or by Act of Congress.'"
Despite the second passage's use of quotation marks, the professor concluded that the passage constitutes plagiarism. A reasonable reader of the paragraph would conclude that her quoted passage came directly from the Act. The clear lack of proper citation was the basis for the professor's and the University's conclusion that A.K. committed plagiarism. The result was a failing grade for the paper and for the course.
An overbroad reading of the University's definition of plagiarism, coupled with the University's position that intent to plagiarize is not required to constitute a violation of the academic code, arguably results in almost unlimited discretion afforded to faculty to determine whether a student plagiarized a paper. That same unfettered discretion applies to the process followed by the University's Academic Integrity Hearing Board when a student challenges a professor's conclusion.
The hearing board upheld the professor's charge that A.K. had committed plagiarism but also concluded that she had no intent to do so. However, that concession is of little benefit to A.K. Neither this conclusion nor the University's definition of plagiarism will appear on A.K.'s transcript. It is this transcript which will be reviewed by postgraduate and professional schools to which A.K. may apply.

Institutional Concerns
Several procedural issues plagued the proceedings between A.K. and the University. Following the Academic Integrity Hearing Board's decision upholding the professor's finding of plagiarism, A.K. sought an appeal she believed was authorized by the University's rules. The University informed A.K. that the hearing board's decision was final and nonappealable, a position it maintained throughout most of the proceedings in the circuit court below. A.K. disagreed, citing a version of the University's Student Handbook. Eventually the trial court determined that the University's position was incorrectan appeal from the hearing board was authorized and permitted.
Another interesting procedural glitch occurred in the process of convening the Academic Integrity Hearing. The University's rules provided that A.K. could attend the hearing with a member of the University community. Over a week in advance of the hearing, A.K. advised the University that she would bring her university community mentor, a University of Tampa alumnus. On the date of the hearing, a University administrator informed A.K. that her mentor was barred from attending the hearing because the University did not consider alumni to be members of the University community.
There are other snippets contained in the record of this proceeding that suggest a University review might be well-advised. *268 If credible, some testimony suggests that the professor had an antagonistic relationship with A.K. and that he belittled her position before other students. It is, of course, the University's matter to determine whether the professor's alleged actions were professional behavior. However, such actions convey a message to all students suggesting what might happen if one were to advance an idea or thought with which the professor disagrees.
Finally, the record suggests that another student committed similar citation errors in his paper as A.K. committed in hers. Professor LaRose graded his paper with a "C" and made no accusation of plagiarism, while A.K. received the substantial punishments already described. If this reference is accurate, the academic treatment of the two students appears to be disparate.
The parties seem to have embarked upon a "battle royale," with no sign of either side willing to consider a diplomatic solution. One wonders if, after the battlefield falls silent and a victor has been declared, there will be any spoils of the war left to enjoy.
NOTES
[1] "Plaintiff's Fourth Amended Complaint" is the operative complaint filed below.
[2] A.K. sought damages for libel, slander, breach of express and implied contract, negligent supervision, and negligent hiring, as well as permanent injunctive relief.